The next case today is In Re. Jedrick H. Burgos Amador. Appeal number 19-1491 and appeal number 19-2060. Attorney Bacchio, please introduce yourself for the record and proceed with your argument. Good morning. May it please the court, this is Linda Bacchio. I represent appellant Jedrick Burgos Amador. I'm sure that the court has read the briefs very carefully, and I believe that most of the issues regarding jurisdiction are covered in the briefs. I would be very happy to answer any questions, but I want to begin. Just before you move on, if I could just ask you one question. A matter that was not pressed significantly by the parties is of interest to me. If we were to determine that the second notice of appeal is timely and sufficient to get the issues before the court, by concluding that the rule for civil appeals should apply for A1, are you satisfied with that or is there some reason that you need a ruling on the rules for criminal appeal or appeal of collateral orders? No, I think that would be... Okay, so I think we have a frozen audio. Attorney Bacchio, can you hear us at all? So, I'm going to use the old trick, Judge, where I'll remove her from the meeting and turn it together. Oh, hi. Are you there? Can you hear us now? Okay. Thank you. Judge, I'll remove her from the meeting and try to get her to come back in. Whatever it takes. Yes, Judge. Attorney Bacchio, please go ahead and begin your argument. Yes, good morning. This is Linda Bacchio for Appellant Judge Burgos. I do believe that the federal rule of civil procedure for civil appeals is applicable to the second notice and would certainly abundantly cover any jurisdictional issues that were raised were the court to believe that the first notice was insufficient. And that is why no motion to dismiss the second notice has been filed. Can I ask you about that? Because I know that the merits matter here, and so I want to make sure we get to the merits, but I do want to understand what kind of case we're dealing with. So, is the client seeking to be represented in this criminal case by your client? Is the defendant? At this point, the client had no further relationship with the attorney once the attorney was disqualified. So, it is not the client's appeal. Is the question of qualification, then, is relevant here solely in terms of a stake in the case, if it's a civil case, solely in terms of the effect it has on the disgorgement order, right? And the client's and the attorney's professional reputation for being disqualified on this record. I see. Okay, so for the disqualified case, so it's both of those aspects of that order that you need to address. But there's no aspect of this that bears any more on a pending criminal case, let alone the pending criminal case out of which it arose. Is that right? That is correct. Then one last question. Given the nature of the case as you're describing it, if it's a purely civil case, you didn't raise this point, but why would the government have a stake in it? It would not, it should not, have had a stake in the first place. So, I mean, from your perspective, is there any reason they should be heard on the question of, in your civil case, challenging an order against your client that's purely a civil matter regarding his professional reputation and the money that's owed him? Is there any reason the government should have any standing to have a view about that? Other than perhaps as a witness, no. Okay. So, I will proceed to the merits unless there are any other questions on the jurisdictional matter. All right. So, this is a very troubling case for a defense counsel, obviously, and it presents the broad issue of whether there are any criteria for invoking the inherent power of a district court to investigate the source of counsel fees. Specifically, in this case, whether the mere fact that an indigent defendant charged with possessing firearms and drugs obtained seriatim retained counsel. Does that meet any legitimate criteria for opening an investigation? That is the first question. And the second question is whether the investigation, if warranted, may be initiated by requiring defense counsel to answer his adversaries' questions under oath in open court. That was the beginning and the end of this investigation. Finally, whether refusing to answer questions posed by the adversary under oath in open court by precipitously invoking the Fifth Amendment creates a per se unwaivable conflict warranting disqualification and disgorgement, or whether, as the court seemed to hold was an alternative reason for disqualifying counsel because he was uncooperative and obstreperous, although that may have been covered in the court's order by the $250 fine. What's very concerning here is that the prosecution, on initiating its request for a hearing, proffered no specific facts to suspect that the source of counsel fees had any interest with any conflict with the interest of the defendant. None. It relied exclusively on a very broad, decontextualized reading of Wood v. Georgia in the Ninth Circuit footnote in Contreras. Just remind me, the triggering event that led to the inquiry was what? It was the appearance of Cedric Burgos with a mentoree at the suppression hearing. The suppression hearing was actually conducted by predecessor counsel Javier Julliar, who shortly after the hearing left to go to the public defender's office. The triggering event was the fact that, as the prosecution stated, there were three private attorneys at the suppression hearing representing a defendant who had been initially appointed a public defender. In other words, he was qualified as indigent. That was the triggering fact. Was there a motion from the government? Yes, they moved to our hearing. And the motion consisted of what in terms of a document? Was it an oral motion or was it a written motion? No, it was a written motion. It's in the docket. And in that motion, the predicate facts that it claimed supported the hearing were just the facts you just recounted and that was the whole of it? Yes, Your Honor. It relied very heavily, as does Apelli's brief, on the nature of the charges and the fact that there were two men and there were guns and drugs. Was there a responsive paper filed in response to that motion by your client? Yes, there was. And there was even an amicus brief filed before the district court saying there must be some factual basis to believe that there is some, at least, potential conflict, conflicting interest. Before they then went to the hearing where the questions started to be asked of counsel, was there a ruling in response to the filing by your client? Yes, it was denied. First of all, not before the hearing. I'm not entirely sure. I believe there was. And it was denied and the hearing was held and a report was written So the way it worked, there was a motion for a hearing, there was an opposition to the motion, and the motion was granted? Correct. The motion for a hearing. And that was just a docket entry? There was no opinion written to explain the motion? There was no opinion. My recollection is that it was simply a referral to the magistrate judge for a hearing. But I'm not 100% sure. I'll check the record on this, counsel, but do you recall whether in the opposition to the hearing or any time prior to the hearing, whether counsel for your client filed any affidavits explaining the source of the funds? No. There was nothing filed. Okay. No. Thank you. So I was saying that they relied simply on those naked facts and a reading of Contreras-Quintero, which in a footnote recommends district judges in the Ninth Circuit to inquire into the source of funds when indigents who are represented by private counsel are charged with guns and drugs. But that was an appeal from a dismissal of a habeas corpus in which the record showed that counsel for the defendant refused to say where the funds were coming from. Client and mother didn't know where the funds were coming from. And the attorney said something like, I'll tell you one thing, I won't represent a snitch. I hope I'm not representing one now. I mean, there were contextual facts there. Anyway, the problem here after ordering the hearing is that the legitimate focus of any conflict inquiry is whether the source of payment created a loyalty to the interests of someone other than the defendant. And here the source of attorney's fees was in fact prior counsel who ceded to Mr. Borgos part of his fee. Now, that could have been put forward and inactivated much earlier. This case procedurally was something of a train wreck. Mr. Borgos, who is an attorney, thought that he could represent himself. And his defense was a somewhat exaggerated or overzealous effort to prove to his client that he was not going to answer questions in public from the prosecution, that he was going to remain strong and loyal to his client. That got him in a lot of trouble ultimately because the procedure was just so out of control and unfocused that he simply ended up invoking the Fifth Amendment. He said, out of an abundance of caution, the district court took that essentially as an admission of guilt to something rather than what it appears to have been, which was a kind of panic response to being ordered to testify under oath and answer his adversary's questions in front of his client in an adversarial public hearing. I'm not suggesting this is correct, but even if it were an appropriate inference to suggest that it's either an admission of guilt or it could cause one likely to believe that there really was some criminal jeopardy at stake, is there anything in the record that would suggest what the criminality would be? Nothing, Your Honor. Nothing, absolutely nothing. It could have been, oh my god, am I going to get in trouble for not reporting the receipt of some money? I mean, it could have been anything at that moment, but there is nothing in the record in contrast to... And I take it the follow-up to your answer there is that that would not necessarily create any inherent conflict. Not at all. The prosecution relied on a Second Circuit or Southern District case, Lara or something like that, in which there were clear implications that the attorney couldn't testify about the source of his fees because the prosecution wanted to introduce evidence about the attorney's fees in order to prove that the defendant increased his extortionate demands in order to cover them. There was a clear nexus there. But here there was absolutely nothing anywhere to suggest any criminal behavior. And this is in strong contrast to Laureano Perez, which is another case from the circuit where there was evidence, there was tape-recorded evidence that the attorney was speaking to someone else who was paying his fees and that person was calling the shots. So there was never any evidence of any conflict. There was never any evidence of any criminality. But, Your Honors, this circuit and the rules have a procedure when there is a concern that there may be a conflict, and that is for the judge to say to the defendant, you know you have some rights here, and you have a right to be represented by somebody who has only your interest at heart. And the prosecution thinks that the person who's paying your fees might have a conflict of interest. Do you want to tell me whether you know who that person is? Is that person someone who is close to you that you believe has your interest at heart? I mean, that's not complicated. It's not unprecedented. So I simply believe that it's very important to create some criteria and some bottom line for conducting an inquiry, and I think it is very important to create some... Let me make sure I understand. I take the first level argument is that the predicate for the inquiry was insufficient, so there shouldn't have been a question to your current clients or to the defendant about the source of the funds or any... Correct. The predicate is missing. Yeah. But in the event that there was a predicate, then there's a fair amount of discretion, not unbounded discretion, as to how to conduct the inquiry, and I don't take you to be disputing that. Not at all, but there is... As between asking the defendant and asking defense counsel, wouldn't there be some reason to think that the more prudent course would be to ask defense counsel rather than the client? Well, yes, that definitely could be done. It normally is done. And here, Mr. Borgo said, Judge, I'm willing to say where the money came from, and the judge and the prosecution insisted that, no, you have to take the witness stand and answer under oath. So I'm not saying that judges have no discretion to decide how to conduct the hearing, but I am saying that respect for the right to counsel of choice under DOC and under Gonzales Lopez... Let me just play it out a step, because the details might matter here. Yes, excuse me. I've been kicked out of the meeting or something? No, we can't see you, but we can hear you. Oh, fine. Okay. And I know you can test this, but let's assume there's a predicate, and then let's assume, because there was a predicate, it's within the discretion to ask counsel about the source of the funds. Correct. What is wrong with just respect to that question, the initial one, asking the source of the funds, to require the answer to be under oath? Yes, requiring the answer to be under oath or under Rule 11, which I think is sufficient. But the problem here was not just that. It was allowing the prosecutor to interrogate his adversary under oath and in open court in front of his client. Particularly, that's the stage in which you think it was a clear abuse of discretion. Yes. Okay. Yes. That crossed the line. And then what follows from that? Let's say that there's force to that conclusion. What follows from that with respect to the relief you're seeking? So, obviously, if there was no predicate, I can see what the relief would be. If there was a predicate and it was permissible to ask and permissible to require the answer to be under oath, but it crossed the line to then allow the prosecutor to interrogate, how does that play out with respect to the relief you're seeking from the actual sanctions imposed and the ruling imposed, given that there was a range of different aspects of your client's conduct that the district court and the magistrate identified as concerning? Well, I think that the result is that once that line was crossed, my client responded in an inappropriate way for which he was sanctioned. But any inappropriateness on his part was caused by the inappropriateness of the way the hearing was being conducted at that point. In other words, he was sanctioned for saying, I'm sorry, Your Honor, that's not going to happen when he was told to take the witness stand. He was sanctioned for citing the Fifth Amendment.  But all of that is a result of his... But I take it you even say in your brief, and admirably so in my view, you say in your brief, look, some sanction could be imposed for the incautious or inappropriate responses by counsel, even if it was provoked in the sense that the procedure that he was being subjected to was itself an abuse of discretion. There's limits to how counsel is supposed to respond, even when there's an erroneous ruling. And so you don't suggest that there might not have been a basis for any sanction. No, and he paid a $250 fine, Your Honor. So I guess... So he was sanctioned. I'm just trying to figure out with respect to relief, what are we supposed to do? In other words, I can see from your perspective, if there was no predicate, what the relief would be. But if we didn't agree with you on that, and we did think that there was an abuse of discretion allowing the prosecutor to interrogate, and yet there was some responses by counsel during the hearing that were inappropriate, what should be the outcome on appeal? I think the outcome on appeal is that the proceedings below should be quashed or suppressed. This should no longer be on the books. And the disqualification and disgorgement order should be vacated. And I think that the public reporting of these proceedings should somehow... And what should happen then on remand, given that you are acknowledging that some of the way that your client responded was not ideal, and it was obviously conduct that the district court called out as part of the basis for its action. So would you make a remand for reconsideration of the sanction order, or do you think that's... No, I'm not appealing the sanction order. I think the sanction order was sufficient and appropriate. I mean, I think the sanction order was sufficient to vindicate the court's authority and punish... And so your thought is that once counsel gave the answer he gave about the source of the funds, even though it wasn't... Did he ever give that answer under oath during the proceeding? No, not... So I guess that's what I'm saying, is if it's not an abuse to ask that the answer be given under oath... Well, I suppose on remand it could be, although the district court said that it would not consider... There was a lot of evidence that was submitted about the mother's payment of the funds and her loan that she took out in order to get the funds to pay the counsel. And I think that the evidence is sufficient to show that he was paid by prior counsel, and that the ultimate source of the funds is actually not a legitimate inquiry. But it's on the record that it came from the client's mother, and I don't see what more my client should do. After all, the only thing that can affect his judgment and loyalty is what he knows about the source of the funds. And it came from brother counsel. Ms. Bacchial, hypothetically, let's say that Mr. Burgos was not even requested to take the stand for whatever reason, and that the only evidence was from the other witnesses, and that that was the evidence that does exist in the record. Is there any reason to think that that is insufficient to establish the source of the funds? No, it clearly does. And that was all under oath? Yes. Why don't you take a minute and wrap up, and then we'll hear from Mr. Bornstein. Yes, I think that under all the circumstances, this court should vacate the decision and order finding Mr. Burgos disqualified, and ordering him to disgorge attorney's fees, because number one, the inquiry was undertaken without any basis, and number two, Mr. Burgos and all of the evidence shows that there was not even a potential for conflict, and number three, that the fine that he has paid, plus the evidence on the record, clearly suffice to distill any legitimate concern that any party or court could have had. Thank you. Thank you. Mr. Bornstein, if you're still with us. Yes, Your Honor, Chief Judge Howard, and may it please the court, David Bornstein, on behalf of the United States. Before reaching the merits of this appeal, I'd first like to address an important threshold procedural issue, which I believe requires the court to dismiss it, and it's that the court lacks jurisdiction of the appeal, because the appellant, Mr. Burgos Amador, did not file a timely notice of appeal. Now, I know that the panel seems interested in pursuing Rule 4A as the possible applicable provision here, but we would ask the panel not to do so, because there's been no adversarial briefing on whether Rule 4A should apply. Instead, the parties have always agreed that Rule 4B applies, and it's a 14-day timeline. But neither Rule 4B speaks about a defendant. It does not speak about a defendant's attorney, I assume you mean, Your Honor. Well, it doesn't, yeah. So there, I think the issue about which rule applies here is complicated and should not be decided without adversarial briefing. I'd like to point out that in future cases, for example, if the court were to decide that coming out of a criminal matter, certain issues fall under Rule 4A, others under Rule 4B. Does the government have a stake in any, is there a pending criminal case right now involving this issue in which the government has an interest? It depends upon the relief that the court awards. Suppose we gave the relief that the opposing counsel is asking for, for the counsel she represents, and we quashed the order. Would that have any effect on the existing criminal case? It would certainly have an effect on the defendant's interest, Mr. Mueller-Vargas, who's been asking for the money to be returned to his family. But that's not your interest. What is the government's interest in the outcome of this case? It's in the nature of the arguments being raised, challenging the ability of the district court... But you might have an interest, but you can't have an interest just in an abstract legal issue. Do you have an interest in the outcome of the case, not the legal resolution of an issue? In this case, whether this sanctioned order survives or not, imagine you don't know what the ground is, it's just yes, no. Does the government have any interest in the outcome of that? Yes, Your Honor, because the arguments being raised, the means by which this court would grant relief, turns on the circumstances under which the government... Suppose we had a one-sentence order, say, vacate the order. Do you have an interest in that? So, without analysis, the court would suggest, say, vacate the disgorgement order? Yeah. Unfortunately, the way it works, Your Honor, is in the position I am in right now. I simply do not know. That is not a predetermined outcome. And because the arguments being raised... What you're saying is that your interest is in the legal resolution that might affect a future case. It doesn't affect the existing case. So that's not typically something that the government is able to appear in a case about. So, Your Honor, you're thinking of a rule that would say, depending upon the relief requested by the appellant, the government may or may not have an interest. No. No. What I'm saying is that you're not interested in this case. You're interested in the legal issue that this court might address. That's not typically a reason for you to participate in a case. There's cases all over the country that are happening that you're not participating in that have legal issues that might have some effect on you. But you don't get to participate in them because they're not in your jurisdiction. This seems to me, this case, as a legal matter, as a criminal case, there's no interest that you have in it anymore. That's not a criticism. Well, I don't want to speculate, but I'm simply not certain that is true. And here's why, Judge Barron. We just heard Mr. Burgos Amdor's lawyer saying that he believes that the government's actions here prejudiced his reputation and has harmed his reputation. And so I believe that the government does, then, have an interest, at the very least, in ensuring that, depending upon the outcome of this case, if this court were to hold that the government did not do anything wrong, that would be one thing. If the court, on the other hand, said, we agree, the government prejudiced his interest, harmed his reputation, the government clearly would have an interest in this particular case on the way in which this particular case would be resolved. But in a sanctions case, in which one, just in an ordinary civil case, when a lawyer is sanctioned by the judge, opposing counsel doesn't usually get to appear as if they're a party to that case. So how is this any different? I believe it's because of how sort of inextricably intertwined the Sixth Amendment right to counsel issue is here. And I also believe it's the fact that we requested the hearing. But the defendant who has that right isn't asserting it. I understand that, Your Honor. I do. But it's the history of this case which I think shows why we are a party to it. And I guess simply because this has never been an issue that's been raised prior to our showing up here today, if it is of genuine concern what the government is doing here, I mean, it is something that I'd like to be able to brief for the panel. Sorry, Your Honor? I said I can understand that. Counsel, is it your understanding, based on prior cases that you've been involved in and just your general knowledge, is it your understanding that when an investigation or prosecution is proceeding and the government becomes aware of serious potential conflict of interest on the part of someone representing a defendant or a target, that you have an obligation to bring that to the attention of the court? Yes, Your Honor. I mean, we do believe that, and that is what we do. Okay. Thank you. And I'd like to just quickly address Rule 4A. Yes, Your Honor? No, go ahead. As I was saying, the issues involved here could also impact a future defendant, whether or not his attorney should have been disqualified, and whether or not the attorney should disgorge funds that the court held were turned over despite a conflict of interest. You can easily see a case in which the court splits the babies, says the attorney can hold onto some, the defendant onto other sources of the funds. And there, if the court were to say that the attorney's appeal may proceed under Rule 4A, but the defendant's appeal must proceed under the shortened timeline of Rule 4B, you'd actually be depriving the defendant of the benefits of Rule 4B, which is the expedited nature of criminal appeals. So I think that for the court to determine… How would that be so? The defendant could still proceed if he wanted to under 4B if he has a case. If the defendant's case is over, obviously he can't proceed. He has no interest in it. His case is over. If there is, after that, still an issue in which the counsel on his own has an interest, that would be 4A. The typical way these sanctions come up in criminal cases is interlocutory to the criminal case. And during that period of time, it makes sense to me to still say it's a criminal case because the defendant still has an interest. He's the party. What's odd here is the criminal case is gone. It's not interlocutory. If I just read the Rule 4B… How are you reading 4B? We should read defendant to mean not defendant? I think it goes to the nature of the appeal and the nature of the issue. How do you read the word defendant in 4B? Well, Your Honor, I believe that the case law applies 4B sometimes more generally into where the other parties before the court hear the defense attorney is appealing. And I will say sometimes not. And the case law is not… There's no straightforward resolution. It is an issue that I looked into. Is there a case you know of where 4B has been held to apply in which the only party appealing is defense counsel in a criminal case that's over in which the defendant is not asserting any interest? Because the applicability… No, and that's because the applicability of 4B is not a contested issue here. So, I have not shown up to argument prepared to argue that 4B… That there is case law saying that 4B would apply here. The parties have always agreed that 4B applies. But if I may move on to the merits now. I believe that this court should affirm the district court. First of all, there was a clear predicate for the further inquiry into the source of the funds paying for Mr. Mulero's attorney. And it is simply that he was an indigent defendant who nonetheless had sequentially four attorneys, retained attorneys, appear on his behalf. And at the suppression hearing had three of them apply for… Sorry, appear on his behalf for each day of the hearing. That provided a sufficient predicate given the Supreme Court's advisement in Wood v. Georgia that there's an inherent risk whenever a criminal defendant… Can I… Just one thing on that point. Yes, your honor. The sequential nature of it seems to me to cut against the predicate rather than in favor of it. Unless I'm missing something. It would make it… I can understand if, you know, eight lawyers suddenly show up all simultaneous. But sequential would just mean it's no different than if an indigent then has one paid counsel. The fact that one paid counsel gives way to another counsel who's paid just means one counsel's being paid throughout. Why does that raise a suspicion? I don't quite follow that. Well, I would then focus the court on the suppression hearing where there were three privately retained attorneys showing up each day for an indigent defendant. And that was indeed the factual predicate that was cited by us, amongst others, in Docket 142, which was the motion we filed uprising the district court of our concern that there might be a conflict of interest lurking here. And given what the Supreme Court said in Wood v. Georgia about the inherent risk of a third-party benefactor paying for defense counsel, and indeed this court itself in Laureano-Perez saying that there's a serious potential for conflict whenever a third-party benefactor pays for defense counsel, there was a sufficient actual predicate to hold an inquiry into the source of the funds and any potential conflict that might arise from it. Now, Attorney Burgos did oppose the hearing, but he did so on the grounds that the only time that a hearing may be held to determine whether there's a potential conflict of interest is when there's already proof of a conflict of interest. And I think the district court was correct in denying his motion to strike our motion because that is simply nonsensical. The purpose of the hearing is to inquire into whether there might be a conflict. You don't need proof of a conflict in order to have the hearing. Next, once the hearing was held, Attorney Burgos simply furthered the need of having a hearing. He intimated to the court that if there was a third-party benefactor, the third-party's interest only perhaps might be aligned with his client's. He intimated that perhaps the third-party benefactor was someone higher up in the ladder of the drug trafficking organization, and he suggested that if the source of the fees were revealed and it were someone higher up in the drug trafficking organization, he thought it would be improper for the government to learn of the name of that drug leader by this means. Those were simply inappropriate reasons to deny a hearing into whether or not there was a conflict of interest given the identity of the third-party benefactor. So we think there's no question that the district court properly exercised its discretion in holding the hearing. Moving on about the way that the hearing was conducted. Judge Barron, you asked if there was anything wrong with conducting the questioning under oath. We believe that it is up to the district court's discretion on how it wants to conduct the hearing. And if the district court wants the attorneys to testify under oath, it is well within their discretion to do so. And indeed, it was well within the district court's discretion to determine that he wanted the prosecutor to be the one conducting the questioning. And here I would turn you towards the Batson context. Now, in Batson hearings, as you know, there's a constitutional right for defendants to make sure that the juries that try them are not the product of racial discrimination. That is a constitutional right of the defendant. And it has been left to lower courts on how to enforce that right of the defendant. And the Fourth Circuit, I'll cite you to one case, it's United States v. Garrison, 849 F. 2nd 103. The Fourth Circuit recognizes that if a district judge wants to, he may hold an adversarial hearing where either the prosecutor or the defense counsel is put under oath and examined in an adversarial setting by the other side. Keep in mind that there are reverse Batson hearings where it's the defense counsel who is accused of using racial discrimination in picking the jury. And indeed, in the famous case out of the Eastern District of New York, the criminal prosecution of Mario Biaggi, where Judge Jack Weinstein, one of the deans of American evidence law, sitting as trial judge, held a Batson hearing. And during trial, and he had the prosecutor take the stand, go under oath, and according to Judge Weinstein, face the dogged and vigorous examination of the defense attorney to get to the truth of the matter as to why certain jurors were struck, potential jurors were struck. And Judge Weinstein said, I did this to get to the truth of the matter since he thought that there was nothing better than placing a person under oath and having adversarial questioning to get to the truth. And we believe it is well within the discretion of the district court to do this, as it is in the Batson context and here. He wasn't asking about the relationship between the lawyer and the client. Your Honor, the questions here, though, do not go to the relationship between doesn't go to the attorney client relationship. It goes to the identity of the third party benefactor. And again, before the hearing was the evidentiary part held was held. Attorney Burgos admitted there was a third party. He simply didn't want to go under oath in talking about who that third party was. He blurted it out that Attorney Couillard was paying his funds, but again, didn't want to go under oath. And I'd like to point out there seems to be some agreement or some idea that the hearing revealed the source of the attorney's fees. That is flatly wrong. And it's flatly wrong because all that it showed was Attorney Maestra said that the client's mother showed up with ten thousand dollars in cash, handed it over to her and then never asked for it again, even though she was relieved after two months. And then Attorney Couillard said that the attorneys that the client's mother showed up, handed him fifteen thousand dollars in cash. And then he passed. He forwarded only, I believe, twenty five hundred of that of that money to attorneys Burgos and Lozada. Both Attorney Maestra and Couillard specifically said, we do not know if anyone else is paying Attorney Burgos and Lozada to take this representation. And indeed, Attorney Burgos, during the hearing, said at least once or twice that the amount of money he was receiving from Attorney Couillard was very low, much lower than he would normally accept. And he didn't want the amount of money to get out. It might make people think that he'd actually represent people for that low amount of money. I think there is no way that a person can look at this record and see that the two witnesses who testified and who said under oath, we do not know who else is paying the attorney. And then the attorney refuses to go under oath and talk about who's paying them. We do not believe that record actually proves the source of the attorney's fees. And. And finally, the disqualification of counsel because the invocation of the Fifth Amendment. I do not believe that it is. Attorney Burgos has gone back and forth about why he invoked the Fifth Amendment. We argue that his current claims are were forfeited before the district court. I think that is inarguably correct. And the reason why is if you look at the transcript of the hearing that was held, the only reasons that Attorney Burgos gave for not wanting to answer questions under oath was that it would be unethical for him to do so. He said it would put him into an uncomfortable position and he felt that he couldn't be a witness in the same case where he was an attorney. That was the only reason he gave. Now, if you go to his reply to our opposition to his motion to reconsider, he filed an affidavit where he said that after the hearing, he talked to other defense attorneys and he realized that his ethical qualms were ill founded and that he could have taken the stand, gone under oath, answer the prosecutor's questions and everything would have been OK. So he completely abandoned that basis of objection. And so his new basis of objection, which is that since he was willing to proffer this information, not under oath and without any further questioning, the judge was required to accept it, not under oath and without any further questioning. There's simply that that objection was not raised before the district court. It's not preserved and and they don't argue plain air on appeal. So as a result, review of it is completely waived. Now, as for why the Fifth Amendment objection was made, he's raised several reasons. He's intimated it was ethical reasons. He is intimated that, you know, perhaps he was worried about not having paid taxes on that money. And again, that really doesn't make sense because he was willing to disclose the name of returning to your. He just didn't want to say it under oath and he didn't want any follow up questions. So, you know, under those and finally, your honor, Marshall Morgan, the magistrate judge at the end of the hearing said, I want the record to be clear. You have invoked your Fifth Amendment right. That means that you believe that if you were to answer questions about the source of the funds, you believe that you'd be implicating yourself in criminal activity. And Attorney Burgos, the appellant here, said, yes, your honor. We believe that it was fully within the court's discretion to take that invocation of the Fifth Amendment and think as the second surface did in the United States versus Scala, that if a criminal defense attorney believes that he might implicate himself in a crime by revealing the source of his attorney's fees, that attorney is conflicted. And as a result of that, let me pause you there and see if Judge Barron has additional questions. Why don't you take 30 seconds and wrap up? Yes, your honor. In the end, we would ask this court not to decide the rule for a issue which no party has discussed. And because it is an issue that will have consequences for future cases, we believe the wisest thing to do is to say that the parties agree that four B applies here. However, you do not have jurisdiction under four B because the first notice of appeal was months premature and the second one was weeks late. And on the merits, your honor, we would ask that you affirm the district court, the district court properly held the hearing and then properly disqualified counsel. Now, I know that the only relief being sought is disgorgement, but that is a very strange form of that. The attorney doesn't want to disgorge the funds, but the district court was fully within its discretion to say that because attorney. Burgos indicated that the source of the funds implicated him in criminal activity and as a result was conflicted in his representation, he had no right to keep any of those funds that follows from the Second Circuit's decision by Chief Judge Learned Hand. We cited in our brief, it's a 1950 case that sets up that since the 17th century rule has been, if you're conflicted counsel, you may not receive any money whatsoever for that representation. And finally, we'd like to point out that simply allowing attorney Burgos to hold on to the funds actually implicates the interest of his client, Milero Vargas. One might think that it is odd to return the money to Milero Vargas when the record actually doesn't show that the money originated from his family. However, that appears to be the most appropriate thing to do under the circumstances and money can be forwarded on to whoever it originally came from. But the record here simply does not prove there's no fact finding by the court. And indeed, there could be no fact finding by the court because the one that all the funds came from attorney Pujar, simply because the one person with personal knowledge as to who had paid him or promised him payment was attorney Burgos himself. And he felt that to go under oath and to answer any questions about it would implicate him in a crime. He's an experienced defense attorney. Thank you. Thank you, counsel. Thank you, Your Honor. That concludes the arguments for today. This session of the Honorable United States Court of Appeals is now recessed until the next session of the court. God save the United States of America and this honorable court. Counsel, you may disconnect from the meeting.